J-A12020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHESTER DAVID MILLER, JR. | : | |
| | : | |
| Appellant | : | No. 159 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 1, 2022
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000830-2020

BEFORE:   PANELLA, P.J.E., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                              **FILED JUNE 12, 2024**

Appellant, Chester David Miller, Jr., appeals from the judgment of sentence entered in the Monroe County Court of Common Pleas, following his jury trial convictions for aggravated assault with a deadly weapon, aggravated assault, simple assault, harassment, recklessly endangering another person ("REAP"), and possession of an instrument of crime ("PIC").[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.  Procedurally, we add that Appellant filed a timely notice of appeal on January 11, 2023.  On January 12, 2023, the court ordered

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(4), 2702(a)(1), 2701(a), 2709(a), 2705, and 907(a), respectively.

Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant complied on February 6, 2023.

Appellant raises the following issues for our review:

> Whether the trial court erred and abused its discretion by allowing the Commonwealth to introduce as evidence a photograph of [Cynthia Warner's ("Victim")] injuries taken several weeks after the incident, and subsequent to [V]ictim's failure to provide reasonable self-care to the wound, thereby creating the suggestion that the wound was worse than it actually was.
>
> Whether the trial court erred and abused its discretion by sentencing [Appellant] in the aggravated range where no sufficient aggravating factors existed.

(Appellant's Brief at 6).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Jonathan Mark, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (**See** Trial Court Opinion, filed March 29, 2023, at 5-10, 13-21) (finding: **(issue 1)** court only permitted Commonwealth to display two side-by-side photographs which depicted wound on Victim's head and ruler showing size of wound; pictures were only displayed on monitor for brief period of time; pictures were probative of injuries sustained in assault and treatment required to address injuries; there was no risk that jury would have been misled, confused or inflamed as result of pictures because it was clearly explained through testimony and argument that pictures were taken almost two weeks

- 2 -

after altercation with Appellant when Victim required further treatment due to complications from healing of wound; court did not abuse its discretion in determining that probative value of photographs outweighed any prejudicial impact; **(issue 2)** record does not support Appellant's bald assertion that there were insufficient aggravating factors to warrant court's sentence in light of mitigating factors presented by Appellant; in imposing Appellant's sentence, court stated on record that it considered pre-sentence investigation report and mitigating factors such as Appellant's cooperation and completion of in-patient drug and alcohol treatment; court found that significant aggravating factors existed in this case; court noted that Appellant was on bail for separate case when he committed assaults in this case, Appellant was convicted of two other offenses while on bail for this case, and Appellant failed to appear at previously scheduled sentencing hearing in this case; based on aggravating circumstances, Appellant's extensive criminal history, and serious physical, mental and emotional impact on Victim from Appellant's actions, court did not abuse its sentencing discretion by sentencing Appellant in aggravated range.) Accordingly, we affirm on the basis of the trial court's opinion.[2]

Judgment of sentence affirmed.

---

[2] We direct the parties to attach a copy of the trial court's opinion to any future filings involving this appeal.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>6/12/2024</u>

**COURT OF COMMON PLEAS OF MONROE COUNTY**
**FORTY-THIRD JUDICIAL DISTRICT**
**COMMONWEALTH OF PENNSYLVANIA**

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** : | |
| : | **No. 830 CRIMINAL 2020** |
| **v.** : | |
| : | **APPEAL DOCKET No. 153 EDA 2023** |
| **CHESTER MILLER, JR.** : | |
| : | |
| **Defendant** : | |

## OPINION PURSUANT TO Pa.R.A.P. 1925(a)

After his post sentence motion was denied, Defendant filed an appeal from the judgment of sentence imposed after a jury convicted him of assaulting his former girlfriend. On receipt, we directed Defendant to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa. R.A.P. 1925(b). Defendant complied, and we now file this opinion in accordance with Pa. R.A.P. 1925(a).

## BACKGROUND

On March 21, 2020, Defendant was arrested and charged with Aggravated Assault with a Deadly Weapon, Aggravated Assault, Simple Assault, Recklessly Endangering Another Person ("REAP"), Unlawful Restraint, False Imprisonment, Possession of the Instrument of a Crime ("PIC"), Tampering with Evidence, and Harassment. All charges stemmed from a domestic incident in which Defendant repeatedly struck his ex-girlfriend, Cynthia Warner, in the head with a closed fist and a large frozen hospital-grade ice pack.

At the time of the assault, Defendant was living with Ms. Warner in her home; however, the two were no longer in a romantic relationship. The assault was precipitated by an argument centered on Ms. Warner wanting to visit her sister after not seeing her for some time due to the lockdown from the Covid-19 pandemic and Defendant telling her

1

she could not go. During the argument, Defendant punched Ms. Warner in the face with a closed fist. When Ms. Warner asked for an ice pack for her face, Defendant retrieved one from the freezer. However, instead of applying the ice pack to the area of the wound he beat Ms. Warner with it on the top of her head several times. Ms. Warner sustained a gash that was four centimeters long and one millimeter deep. (N.T., 06/24/22, pp. 169).

Defendant did not file omnibus pretrial motions. During the pretrial period, he made bail. However, while on bail, Defendant was arrested three times and pled guilty with respect to one of the arrests to Public Drunkenness and Disorderly Conduct.

On June 24, 2022, after a two-day trial, the jury found Defendant guilty of Aggravated Assault with a Deadly Weapon, Aggravated Assault, Simple Assault, Harassment, REAP, and PIC. Defendant was found not guilty of Unlawful Restraint, False Imprisonment, and Tampering with Evidence.

In the order accepting the verdict, we scheduled sentencing for August 22, 2022, and directed our Probation Department to conduct a Pre-Sentence Investigation ("PSI") and furnish the Court with a copy of its report.

On August 2, 2022, Defendant pled guilty in a separate case, docketed to No. 665 Criminal 2020, to Possession of Drug Paraphernalia. Sentencing was scheduled for August 22, 2022, to coincide with the sentencing in this case.

Subsequently, the PSI was completed. The PSI report was made available to counsel for both parties and the Court.

Defendant sought a continuance of the sentencing hearing in order to attend to personal matters. The request was granted and sentencing was re-scheduled to September 27, 2022.

2

Shortly before the continued sentencing date, Defendant sought another continuance, for mostly the same reasons. That request was denied. Nonetheless, Defendant failed to appear for sentencing. As a result, a bench warrant was issued.

Ultimately, on December 1, 2022, the sentencing hearing was convened. Before sentence was imposed, Defendant and his attorney addressed the Court. Counsel for Defendant acknowledged Defendant's long criminal record and corresponding Prior Record Score of 5. However, noting that Defendant had cooperated with authorities in other matters, was a man in his mid-50s, and had had only a few run-ins with the law between the assault and the sentencing, he asked for a standard range sentence on the Aggravated Assault with a Deadly Weapon conviction, with the sentences imposed on all other convictions to run concurrent. (N.T., 12/1/2022, pp. 5-8). Defendant insincerely apologized for missing the earlier sentencing hearing, calmly telling the Court that he failed to appear because he had personal matters to wrap up before going to jail. In addition, Defendant told us he had made his peace with God. (*Id.* at 8-9).

The assistant district attorney (ADA) then addressed the Court. The ADA pointed out that Defendant's long criminal history, which dates back to 1996, includes multiple prior assault convictions. The ADA also highlighted aggravating factors and the impact the assault and attendant injuries had on Ms. Warner. In the end, the ADA asked for a total sentence of 8 to 16 years' incarceration in this case and a period of probation in case No. 665. (*Id.* at 9-11).

At the conclusion of the hearing, we sentenced Defendant to an aggregate of 8 ½ to 20 years' incarceration, plus the 12-month period of reentry supervision required by 61 Pa. C.S.A Section 6137.2. Structurally, Defendant was given aggravated range

3

sentences on the Aggravated Assault with a Weapon and PIC convictions which were run consecutively. Sentences were imposed on all other convictions; however, those sentences were run concurrently.[1] In case No. 665, Defendant was given a 6 to 12 month sentence that was run concurrently with the sentence imposed in this case.

Before imposing sentence, we explained our reasoning and informed Defendant of the facts, information, and documents on which the sentence was based. Specifically, we advised Defendant that the sentence was based on the evidence presented at trial, the record and file in this case, the comprehensive PSI report that had been prepared by our Probation Office, the statements made by Defendant, his attorney, and the ADA during the sentencing hearing, and the applicable sentencing laws, rules, and guidelines. We then stated our reasons, which included discussion of aggravating factors, on the record. (N.T., 12/1/22, pp. 13-22; PSI Report, filed (under seal) March 20, 2023). We incorporate our on-record statements and reasoning into this opinion by reference.

Subsequently, Defendant filed a post sentence motion seeking reconsideration of his sentence, asserting that he should have been sentenced within the standard range on the lead Aggravated Assault conviction and all other sentences should have been run concurrently. According to Defendant, he deserved only a standard range sentence for the lead Aggravated Assault conviction and sentencing him separately on the PIC conviction was redundant. (Defendant's Motion to Reconsider Sentence, ¶¶ 3-9).

---

[1] In this regard, a separate sentence was imposed on the Simple Assault conviction. In reviewing the transcript if the sentencing hearing in preparation of this opinion, we were reminded that, at sentencing, both parties were in agreement and the Court found that a separate sentence for Simple Assault should not be imposed because the Simple Assault conviction merged with the Aggravated Assault convictions. Since the Simple Assault sentence is substantially shorter than and was run concurrently with the aggregate sentence, as a practical matter the error should not adversely impact Defendant. Nonetheless, there was an error. An amendatory order correcting the error is being filed simultaneously with this opinion. Since the order merely corrects an error that is clear from the record (*See* N.T., 12/1/2022, pp. 15-16), we believe the amendatory order is permissible during the pendency of this appeal.

On December 14, 2022, we issued an order denying Defendant's motion. Defendant then timely filed this appeal.

## DISCUSSION

1.    Photographs

Defendant's first assignment of error centers on Commonwealth Exhibit 8, consisting of photographs of the wound on top of Ms. Warner's head. Defendant contends that we "erred and abused [our] discretion by allowing the Commonwealth to introduce as evidence photographs of the victim's injuries taken several weeks after the incident, and subsequent to the victim's failure to provide reasonable self-care to the wound, thereby creating the suggestion that the wound was worse than it actually was." (Defendant's Rule 1925(b) Statement, filed February 6, 2023, ¶1). Under the facts and circumstances of this case and the applicable law, there is no merit to this contention.

It is firmly established that,

> "[questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and [a reviewing court] will not reverse a court's decision on such a question absent a clear abuse of discretion." *Commonwealth v. Chmiel*, 558 Pa. 478, 493, 738 A.2d 406, 414 (1999), *cert. denied*, 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000). An abuse of discretion requires:
>
>> not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.
>
> *Commonwealth v. Widmer*, 560 Pa. 308, 322, 744 A.2d 745, 753 (2000) (citation omitted).

*Commonwealth v. Hunzer*, 868 A.2d 498, 510 (Pa. Super. 2005), *appeal denied*, 880 A.2d 1237 (Pa. 2005).

5

The basic requisite for the admissibility of any evidence in a case is that it be competent and relevant. "In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact." *Commonwealth v. Antidormi*, 84 A.3d 736, 750 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014) (internal citations and quotation marks omitted).

The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Pa.R.E. 403. Trial judges have authority to oversee the presentation of evidence so that overtly passionate, intentionally biased and inflammatory material is kept out of the courtroom. *Commonwealth v. Bryant*, 67 A.3d 716 (Pa. 2013). "Unfair prejudice" means a tendency to suggest decision based on an improper basis or to diver the jury's attention away from its duty of weighing the evidence impartially. Comment to Pa.R.E. 402.

Evidence will not be prohibited as unduly prejudicial merely because it is harmful to the defendant. Exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than legal propositions relevant to the case. *See Commonwealth v. Antidormi*, 84 A.3d 736 (Pa. Super. 2014). In this regard, courts are not required to sanitize trials to eliminate all unpleasant facts from the jury's

6

consideration where those facts are relevant to the issues at hand. *See Commonwealth v. Hairston*, 84 A.3d 657 (Pa. 2014).

In this case, prior to opening statements counsel for Defendant objected to the challenged photographs on two grounds. First, the Commonwealth did not provide him with the photographs until the eve of trial. Second, the photographs were prejudicial in that they were taken two weeks after the assault, did not depict the gash on top of Ms. Warner's head as it appeared on the night of the assault, related to a subsequent wound irrigation procedure, and were graphic. (N.T., 6/23/2022, pp. 23-25).[2]

As to the timeliness objection, the ADA represented that she had not seen the photographs until Ms. Warner, who at the time was living in Virginia and had traveled back to Monroe County for the trial, gave them to her the afternoon before trial began. Immediately after receiving them, the ADA scanned the photos and sent them to defense counsel. (*Id.* at 25).

We accepted the representation that the Commonwealth knew nothing about the photographs until the victim brought them in the day before the trial and overruled the timeliness objection. (N.T., 06/24/22, pp. 27). However, since we had not yet seen the photographs and in any event could not assess them in context because we had not yet heard the evidence and the parties' respective theories of the case, we reserved ruling on the objection to the prejudicial nature of the photographs. (N.T., 06/24/22, pp. 24 and 28).

---

[2] Counsel for Defendant also objected to photographs that depicted the condition of Ms. Warner's face, rather than the top of her head, two weeks later. However, those photographs were not shown. (N.T., 6/23/2022, pp. 135-36). Accordingly, that part of counsel's objection is moot.

Before the Commonwealth offered Exhibit 8, Ms. Warner's injuries had been described and photographs of her head wound taken at the hospital on the night of the assault had been admitted. Likewise, the area of her residence in which the assault occurred had been described and photographs of the scene and the ice pack used in the assault had been admitted. In addition, Ms. Warner had testified about the attack, including Defendant's assault with the ice pack, the injuries she sustained, and the treatment she received that night at the hospital, including staples to close the wound on her head. Ms. Warner had also testified that approximately two weeks later she had received subsequent treatment, including irrigation of the wound, because the wound had become infected. (N.T., 6/23/2022, pp. 50-52, 67, 81, 97, 116-123, 130-134; Commonwealth Exhibit 6).

Also before Exhibit 8 was shown, we called a sidebar. Counsel for Defendant reiterated that the photographs were graphic. He also argued that the photos were irrelevant because they related to the irrigation procedure and were not representative of what the wound looked like on the night of the attack. The ADA indicated that she would not be showing all of the photos that Ms. Warner had provided. Instead, the Commonwealth sought to admit only one Exhibit consisting of side-by-side photos taken at the time the irrigation procedure was performed that depicted the wound on Ms. Warner's head and a ruler. We held that the Commonwealth could show only that one exhibit and counsel for Defendant was free to cross-examine Ms. Warner on when the photographs were taken, wound care, and related matters. (*Id.* at 134-137).

Thereafter, Exhibit 8 was admitted. It was shown on a monitor for only a brief period of time. (Id. at 138). On direct examination, Ms. Warner testified that the photographs

were taken at the time she underwent the irrigation procedure. (*Id.* at 137-138). Thereafter, counsel for Defendant cross examined her on when the photographs were taken, her care of the wound, and related matters. Among other things, defense counsel specifically highlighted and confirmed that the images were taken almost two weeks after the incident due to complications from the healing of the wound. (*Id.* at 138-142). Counsel also subsequently brought out the measurements of the wound – four centimeters long, one millimeter deep – as recorded in hospital records. (*Id.* at 140-141, 169-171). Later, on the defense side of the case, counsel for Defendant reintroduced as defense Exhibits the photographs of Ms. Warner's injuries that the Commonwealth had earlier admitted and, referencing the photos, Defendant testified that on the night of the assault the wound was "miniscule." (N.T., 6/24/2022, pp. 34-35, Defendant Exhibits 4 and 5). Finally, during his closing counsel for Defendant freely argued that the irrigation procedure was necessitated by Ms. Warner's failure to properly care for the wound rather than the injury itself. (*Id.* at 66, 70-72).

Given these facts and circumstances, and under the law summarized above, the admission of Exhibit 8 was not an abuse of discretion. Initially, we reiterate our acceptance of the ADA's representation that the Commonwealth did not receive the photographs from Ms. Warner, who the time of trial lived out-of-state, until the day before the trial. Similarly, it is undisputed that the ADA immediately provided the photos to Defendant's attorney. Thus, counsel for Defendant had at least some advance time to review them and opportunity to object and preserve the issue. Additionally, while the photographs were new, both parties were aware and hospital records disclosed in discovery showed that Ms. Warner underwent subsequent treatment because her would

had later become infected. In sum, there was no discovery violation, intentional withholding of evidence or purposeful attempt to disadvantage the defense, and the timing was not overly prejudicial.

As to the photographs themselves, in the end the Commonwealth offered and we allowed only one exhibit. The photographs included in that exhibit were clearly probative of the injuries Ms. Warner sustained in the assault and the treatment she received, both on the night of the attack and for the subsequent infection, for the wound inflicted by Defendant. At minimum, they were relevant to the determination of whether Defendant caused or attempted to cause injury or serious bodily injury – elements of the assault charges – to Ms. Warner. While the photographs are graphic, we did not and do not view them as gruesome or inflammatory or overly prejudicial. Further, they were published on the monitor during trial for only a brief period of time. Moreover, there was no attempt to misrepresent that the photographs depicted the wound on the day Ms. Warner was injured or to otherwise mislead, confuse, or inflame the jury. On the contrary, the photographs were presented in context and as part of the continuum and longitudinal impact of the assault and treatment Ms. Warner received as a result of her injuries.

Simply, the challenged photographs were probative and, on balance, we found that the probative value outweighed any prejudicial impact. We detect no error or abuse of discretion in that determination.

2.      Ice Pack

In his third assignment of error, which we will discuss next, Defendant asserts that we "erred and abused our discretion by allowing testimony regarding an ice pack which

was found via an illegal and unauthorized search of Miller's trash can." (Defendant's Rule 1925(b) Statement, filed February 6, 2023, ¶3). This issue has been waived.

It is well-settled that the failure to make a timely and specific objection constitutes a waiver of the claim. *See Commonwealth v. Sauers*, 159 A.3d 1 (Pa. Super. 2017), *appeal denied.,* 170 A.3d 1057 (Pa. 2017); *Commonwealth v. Bruce*, 916 A.2d 657 (Pa. Super. 2007); *Commonwealth v. Guilford,* 861 A.2d 365 (Pa. Super. 2004); *Commonwealth v. Montavlo*, 641 A.2d 1176, 1184 (Pa. Super. 1994). Issues not raised in the lower court are waived and cannot be raised for the first time on appeal. *Commonwealth v. Colavita,* 993 A.2d 874, 891 (Pa. 2010) ("[C]ourts should not reach claims that were not raised below."); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). *See also Commonwealth v. Tejada*, 107 A.3d 788 (Pa. Super. 2015), *appeal denied*, 119 A.3d 351 (Pa. 2015); *Commonwealth v. Lincoln*, 72 A.3d 606 (Pa. Super. 2013). Issue preservation is

> foundational to proper appellate review. . . . By requiring that an issue be considered waived if raised for the first time on appeal, our courts ensure that the trial court that initially hears a dispute has had an opportunity to consider the issue. This jurisprudential mandate is also grounded upon the principle that a trial court . . . must be given the opportunity to correct its errors as early as possible. Related thereto, we have explained in detail the importance of this preservation requirement as it advances the orderly and efficient use of our judicial resources. Finally, concepts of fairness and expense to the parties are implicated as well.

*Commonwealth v. Miller*, 80 A.3d 806 (Pa. Super. 2013) (quoting *In re F.C. III,* 2 A.3d 1201, 1212 (Pa. 2010)) (citations omitted in original). As a result,

> Normally, issues not preserved in the trial court may not be pursued before this Court. Pa.R.A.P. 302(a). For example, a

11

> request to withdraw a guilty plea on the grounds that it was involuntary is one of the claims that must be raised by motion in the trial court in order to be reviewed on direct appeal. Similarly, challenges to a court's sentencing discretion must be raised during sentencing or in a post-sentence motion in order for this Court to consider granting allowance of appeal. Moreover, for any claim that was required to be preserved, this Court cannot review a legal theory in support of that claim unless that particular legal theory was presented to the trial court.

*Commonwealth v. Rush,* 959 A.2d 945, 949 (Pa. Super. 2008), *appeal denied,* 972 A.2d 521 (Pa. 2009).

In this case, Defendant complains that we erred by allowing testimony regarding the ice pack he used to assault Ms. Warner because the pack was found "via an illegal and unauthorized search of Miller's trash can." However, Defendant did not challenge the search or seek to suppress the ice pack (or any other evidence) before trial, and did not raise an improper search-based objection to testimony regarding the ice pack during the trial. Accordingly, this assignment of error has been waived.

In the alternative, even if the issue is deemed preserved and reviewed on its merits, this assignment of error is unavailing. The evidence presented at trial indicated that when officers arrived at Ms. Warner's residence, Defendant welcomed them into the home to investigate. (*See* N.T., 6/23/2022, pp. 88, 106; N.T., 6/24/2022, p. 15). The evidence also demonstrated that Defendant told the police he had discarded the ice pack and, further, that the pack was found in a garbage can outside the residence. Thus, the evidence tended to show that Defendant consented to the search and, in any event, had abandoned the ice pack.

3. <u>Sentencing Challenge</u>

In his second assignment of error, which we discuss last, Defendant baldly asserts that this Court, "erred and abused its discretion by sentencing Miller in the aggravated range where no sufficient aggravating factors existed." (Defendant's Rule 1925(b) Statement, filed February 6, 2023, ¶2). Defendant's challenge to the discretionary aspect of his sentence lacks merit.

Sentencing is a matter within the sound discretion of the trial court. *See Commonwealth v. Walls,* 926 A.2d 957 (Pa. 2007). In sentencing each particular defendant, the sentencing court may select one or more options with regard to determining the appropriate sentence to be imposed. The options include probation, guilt without further penalty, partial confinement, or total confinement. *Id.*; 42 Pa.C.S. § 9721(a). The court must impose a sentence that is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). *See Walls*, 926 A.2d at 967-68; *Commonwealth v. Dodge*, 957 A.2d 1198, 1200 (Pa. Super. 2008), *appeal denied*, 980 A.2d 605 (Pa. 2009).

In general, a sentencing judge must consider pertinent facts and sentencing factors and the force of the evidence and may not commit an error of law or inflict punishment that exceeds statutory prescriptions. *Commonwealth v. Youngkin*, 427 A.2d 1356, 1369 (Pa. Super. 1981). In more specific terms, "[w]hen imposing a sentence, a court is required to consider the particular circumstance of the offense and the character of the defendant….In particular, the court should refer to defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Moury*, 992 A.2d at

13

171 (quoting *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002), *appeal denied*, 868 A.2d 1198 (Pa. 2005), *certiorari denied*, 545 US 1148 (2005).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa. C.S.A. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant[.]" *Commonwealth v. Walls*, 846 A.2d 152, 157 (Pa. Super. 2004). Additionally, a court should consider the particular circumstance of the offense and the character of the defendant, and should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation. *Moury*, 992 A.2d at 171 (citing *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002), *appeal denied*, 868 A.2d 1198 (Pa. 2005), *cert. den*, 545 U.S. 1148 (2005)).

The sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing are instructive and advisory, but are not binding on the sentencing court. The court is obligated to consider the guidelines, but is under no duty to sentence a particular defendant within the guidelines or to impose the minimum possible confinement consistent with the guidelines. *Walls*, 926 A.2d at 575; *Dodge*, 957 A.2d at 1201. Nonetheless, "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Commonwealth v. Moury,* 992 A.2d 162, 171 (Pa. Super. 2010) (citing *Commonwealth v. Cruz-Centeno*, 668 A.2d 536 (Pa. Super. 1995), *appeal denied*, 676 A.2d 1195 (Pa. 1996)). However, if the sentencing court imposes a sentence outside of the guidelines, it must provide a statement of its reasons for the deviation, and its failure to do so may constitute grounds for resentencing. *Walls,* 926 A.2d at 963; 42 Pa.C.S. § 9721.

The court determines whether aggravating circumstances exist. If aggravating circumstances are present, "the court may impose an aggravated sentence …." 204 Pa. Code. § 303.13(a). A sentencing judge "has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence in the aggravated range." *Commonwealth v. Stewart*, 867 A.2d 589, 593 (Pa. Super. 2005) (citation omitted). *See also Commonwealth v. Duffy*, 491 A.2d 230, 233 (Pa. Super. 1985) (holding that a sentencing judge may consider any legal factor in deciding whether a defendant should be sentenced within the aggravated range). A sentencing judge may even consider uncharged criminal conduct for sentencing purposes.

> Not only does the case law authorize a sentencing court to consider unprosecuted criminal conduct, the sentencing guidelines essentially mandate such consideration when a prior record score inadequately reflects a defendant's criminal background.

*Commonwealth v. P.L.S.*, 894 A.2d 120, 131 (Pa. Super. 2006), *appeal denied*, 906 A.2d 542 (Pa. 2006). *See also* 204 Pa. Code §303.5(d). When imposing a sentence that departs from the standard range, the sentencing judge must state on the record his reasons for the sentence in the aggravated range. 204 Pa. Code § 303.3; *Commonwealth v. Hoover,* 492 A.2d 443 (Pa. Super. 1985).

The court also determines whether the sentence imposed should run consecutively or concurrently with other sentences to which the defendant is subject. In this regard, it is well-settled that the sentencing judge has discretion to impose a sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. See *Commonwealth v. Mastromarino*, 2 A.3d 581 (Pa. Super. 2010) (and cases cited therein); *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010);

15

*Commonwealth v. Lilley*, 978 A.2d 995 (Pa. Super. 2009); *Commonwealth v. Pass*, 914 A.2d 442 (Pa. Super. 2006); *Commonwealth v. Marts, 889*, A.2d 608 (Pa. Super. 2005) (same). *See also* 42 Pa. C.S.A. §9721(a).

The sentencing judge must state his or her reasons for the sentence on the record. 42 Pa.C.S.A. § 9721(b). The judge may satisfy this requirement by stating or demonstrating at time of sentencing that the judge has been informed of the reasons by the PSI report. *Commonwealth v. Coss*, 695 A.2d 831, 834 (Pa. Super. 1997); 42 Pa.C.S.A. § 9721(b). When, as here, a PSI report exists, the law presumes that

> the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself….[Sentencing courts] are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true … in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

*Commonwealth v. Devers*, 546 A.2d at 18. *See also Moury,* 992 A.2d at 171*; Commonwealth v. Fowler*, 893 A.2d 758 (Pa. Super. 2006); *Commonwealth v. Tirado,* 870 A.2d 362 (Pa. Super. 2005); *Commonwealth v. Burns,* 765 A.2d 1144, 1150-1151 (Pa. Super. 2000). Additionally, a sentencing judge is not required, when giving the reasons for a particular sentence, to make a specific reference to the factors set forth in the Sentencing Code that were considered in deciding the sentence, but the record as a

whole must reflect that the judge in fact considered the sentencing factors. *Commonwealth v. Coulverson*, 34 A.3d 135, 145-146 (Pa. Super. 2011).

In sum, our sentencing laws establish a framework for sentencing. Within the established framework, trial courts have broad discretion in determining the range of permissible confinements that best suits the particular defendant and the circumstances surrounding the event. *See Commonwealth v. Moore*, 617 A.2d 8, 12 (Pa. Super. 1992).

The appellate standard of review is reflective of the type of discretion vested in sentencing courts. As recently articulated by our Supreme Court:

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion....[A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.  In more expansive terms, our Court recently offered: an abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

*Walls*, 926 A.2d at 961 (internal citations, quotation marks, and footnote omitted). For purposes of appellate review of a particular sentence, an "unreasonable" decision from the sentencing court would be one that is "'irrational' or 'not guided by sound judgment.'" *Id.* at 963. *See Dodge,* 957 A.2d at 1200; 42 Pa.C.S. § 9781(c)(2) and (3).[3]

---

[3] The Sentencing Code prescribes a slightly different standard of appellate review for sentences that are outside the guidelines as opposed to sentences that fall within guideline ranges.  Sentences that fall outside the guideline range are subject to the "unreasonable" standard of 42 Pa.C.S.A. Section 9781(c)(3), while sentences that fall within

Challenges to the discretionary aspects of sentencing do not entitle a defendant to review as of right. In order to establish that review is warranted, the appellant must demonstrate that there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. A substantial question exists only when the defendant advances a colorable argument that the sentencing judge's actions were either: 1) inconsistent with a specific provision of the Sentencing Code; or 2) contrary to the fundamental norms of the sentencing process. *See Commonwealth v. Mouzon*, 812 A.2d 617, 627-628 (Pa. 2002); *Commonwealth v. Crump*, 995 A.2d 1280, 1282 (Pa. Super. 2010), *appeal denied*, 13 A.3d 475 (Pa. 2010); *Moury, supra; Commonwealth v. Sierra*, 752 A.2d 910 (Pa. Super. 2000). These issues must be examined and determined on a case-by-case basis. *Commonwealth v. Marts*, 889 A.2d 608, 613 (Pa. Super. 2005).

Before reviewing the discretionary aspects of a sentencing claim, the Superior Court conducts:

> a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).… Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or raised in a motion to modify the sentence imposed at that hearing.

---

guideline ranges are subject a "clearly unreasonable" standard of 42 Pa.C.S.A. Section 9781(c)(2). *See Dodge*, 957 at 1200 n.3.

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (citations and quotation marks omitted). *See also Commonwealth v. Oree*, 911 A.2d 169 (Pa. Super. 2006), *appeal denied*, 591 Pa. 699, 918 A.2d 744 (2007) (explaining challenges to discretionary aspects of sentencing must be raised in post-sentence motion or during sentencing proceedings; absent such efforts, claim is waived; inclusion of discretionary aspects of sentencing claim in Pa. R.A.P. 1925(b) statement will not cure waiver).

It is now well-settled that the imposition of consecutive, rather than concurrent, sentences generally does not raise a substantial question. Such a claim may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh and *prima facie* appears excessive considering the criminal conduct that occurred in the case, the nature of the crimes, and the length of imprisonment. See *Commonwealth v. Dodge*, 77 A.3d 1263 (Pa. Super. 2013) ("*Dodge III*") (and cases cited therein), *appeal denied*, 91 A.3d 161 (Pa. 2014); *Commonwealth v. Mastromarino*, *supra* (same); *Commonwealth v. Moury*, *supra* (same). As the Superior Court stated in *Dodge III*:

> To make it clear, a defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

*Dodge III*, 77 A.3d at 1270 (emphasis in original; citations and footnote omitted).

In this case, we informed Defendant on the record of the documents and information we considered when imposing sentence. This included the comprehensive

PSI report prepared by our probation office, the evidence and arguments presented at trial, the record and file in this matter and in Case No. 665, the statements made by Defendant, his attorney, and the ADA during the sentencing hearing, and the applicable law. We also summarized on the record our reasons for the sentence given, including our determination that aggravating circumstances existed. (N.T., 12/1/22, pp. 13-22; PSI Report). Our on-record statements and reasoning and the PSI report suffice to address and Defendant's sentencing challenge.

To the extent additional reasoning is deemed necessary, we highlight, amplify, and supplement the PSI and our on-record remarks as follows:

As the ADA argued, as the PSI report demonstrates, and as we discussed on the record, aggravating circumstances clearly exist. Of significance, Defendant committed the assaults in this case while on bail in case No. 665. Similarly, while on bail in this case Defendant was convicted of Public Drunkenness and Disorderly Conduct. In addition, Defendant failed to appear for sentencing because he had personal matters to attend to before he went back to jail. This failure to appear occurred even though Defendant had previously been granted a continuance to attend to personal matters. By themselves these obvious aggravating circumstances debunk Defendant's bald assertion that "no sufficient aggravating factors existed."

Moreover, in imposing sentence we considered not only the aggravating circumstances, but, also, the nature and grading of and circumstances surrounding the crimes of which Defendant was convicted; the physical mental, and emotional impact the crimes had on Ms. Warner; Defendant's extensive criminal history consisting 31 adult arrests and 24 convictions, including multiple prior assault convictions; and other relevant

20

sentencing factors summarized in the PSI report. We also considered the few favorable factors that were presented, including Defendant's completion of in-patient drug and alcohol treatment and his cooperation in other matters. The sentence we imposed resulted from our weighing of all applicable sentencing factors and considerations.

In sum, in imposing sentence, we specifically articulated reasons for sentencing Defendant in the aggravated range on the Aggravated Assault and PIC convictions. In any event, we firmly believe that the sentence imposed is fully supported by the facts and the law and that in sentencing Defendant we neither erred nor abused our discretion.

For these reasons, we believe that the judgement of sentence should be affirmed. Nothing further needs to be determined at this time.

**BY THE COURT:**

**DATE:** March 28, 2023

**Jonathan Mark,** **J.**

Filed
03/29/2023  8:26AM
Court of Common Pleas

Cc:     Superior Court of Pennsylvania
        Jonathan Mark, J.
        District Attorney (LS)
        Robert Saurman, Counsel for Defendant

21